IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON LIS and ALLEN LIS,<br><br>*Plaintiffs*,<br><br>v.<br><br>KONINKLIJKE PHILIPS N.V.;<br>PHILIPS NORTH AMERICA LLC;<br>PHILIPS RS NORTH AMERICA LLC;<br>PHILIPS HOLDING USA, INC.;<br>PHILIPS HEALTHCARE; and<br>HEALTH SYSTEM SERVICES, LTD.,<br><br>*Defendants*. | CASE NO. _____ |

### NOTICE OF REMOVAL

Defendant Philips RS North America LLC ("Philips RS") (together, with Koninklijke Philips N.V., Philips North America LLC ("Philips NA"), Philips Holding USA, Inc. ("Philips Holding"), and Philips Healthcare, the "Philips Defendants" or "Philips")[1] hereby provides notice pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 of the removal of the above-captioned case from the Supreme Court of the State of New York, County of Niagara, in which it is now pending at Case Number E180656/2023 (the "Underlying Action"), to the United States District Court for the Western District of New York, and states as follows:

---

[1] All properly joined and served parties consent to removal. As discussed further below, it is not clear which entity Plaintiffs attempt to join by naming "Philips Healthcare" in the Complaint. Nonetheless, as alleged, Philips Healthcare is diverse. Ex. A ¶ 17. As of the filing of this Notice, Koninklijke Philips N.V. has not been served with the Complaint in this action. Plaintiffs' Complaint acknowledges that Koninklijke Philips N.V. is a company established under the laws of The Netherlands, with its principal executive offices in Amsterdam, The Netherlands, and therefore is diverse from Plaintiffs. Ex. A, ¶ 12.

1

I. INTRODUCTION

1. On August 10, 2023, Plaintiffs Sharon Lis and Allen Lis (together, "Plaintiffs") filed a complaint in the Supreme Court of the State of New York, County of Niagara, Case Number E180656/2023 (the "Complaint"), attached as **Exhibit A, Complaint**.

2. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served to date upon Philips RS, including the Complaint, are attached.

3. No other pleadings have been served on Philips RS in this litigation.

4. By filing a Notice of Removal, Philips RS does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the parties, or venue, and Philips RS specifically reserves its right to assert any defenses and objections to which it is entitled.

II. FACTUAL BACKGROUND

5. Plaintiffs allege Philips "develops, manufactures, markets, imports, sells, and distributes a variety of products for sleep and home respiratory care" as well as "a variety of ventilator devices for patients with respiratory conditions." Ex. A, ¶ 2.

6. Plaintiffs allege on June 14, 2021, Philips issued a recall of certain Continuous Positive Airway Pressure ("CPAP"), and Bilevel Positive Airway Pressure ("BiPAP") machines and notified the public of potential serious health risks caused by polyester-based polyurethane sound abatement foam ("PE-PUR foam") used in the design and manufacture of the recalled devices. *Id*. ¶¶ 3-4.

7. Plaintiffs allege PE-PUR foam degradation may have negative health effects, including "acute respiratory distress syndrome (ARDS), lung disease, lung damage, chemical poisoning, heart attack, heart failure, kidney disease, reactive airway disease (RAD), respiratory failure, severe inflammation, and multiple types of cancer." *Id*. ¶ 4.

8. Plaintiff Sharon Lis alleges that on or about April 11, 2018, Health System Services ("HSS") distributed a recalled device (Serial No. J2125235256ED) to her (the "Device"), which she used "on a regular basis from the date she acquired it in early 2018 until approximately June 2021" to treat obstructive sleep apnea. *Id.* ¶ 6.

9. Plaintiff Sharon Lis alleges that, as a result of using the Device, on or about August 11, 2022, she "was diagnosed with bronchogenic carcinoma, a cancerous tumor originating in her lung along the right middle portion of her chest that can only be removed surgically." *Id.* ¶ 7.

10. Plaintiff Sharon Lis allegedly "underwent a right middle lobectomy to remove a section of the carcinoid tumor in her lung," allegedly resulting "in only half of the cancerous tumor being removed due to its location on her lung." *Id.*

11. Plaintiff Sharon Lis as a result allegedly "has suffered and continues to suffer from severe symptoms of lung cancer, requiring continuous medical treatments and resulting in severe associated pain, suffering, and emotional distress." *Id.* ¶ 8.

12. Plaintiff Sharon Lis also alleges she "must have frequent scans of her body and blood work"; that "[s]he is prescribed several pain medications to be able to tolerate the extreme pain that this cancer causes"; that she suffers "from serious and dangerous side effects as a result of the cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, diminished enjoyment of life" and that she "requires lifelong medical treatment and monitoring." *Id.* ¶¶ 9, 10.

13. She asserts causes of action in negligence, *id.* ¶¶ 93-114; strict liability – design defect, *id.* ¶¶ 115-39; strict liability – failure to warn, *id.* ¶¶ 140-71; strict liability – manufacturing defect, *id.* ¶¶ 172-82; fraud and misrepresentation, *id.* ¶¶ 183-97; and breach of warranties, *id.* ¶¶ 198-215, against all Defendants.

14. Plaintiff Allen Lis "brings a derivative claim for loss of consortium arising from injuries relating to those sustained by his lawful spouse, Sharon Lis." *Id*. ¶¶ 83, 216-20.

15. Plaintiffs demand judgment against Defendants "in an amount exceeding the jurisdictional limits of all other courts which would otherwise have jurisdiction over this matter; punitive damages in a sum of money to be determined by the trier of fact; and for such other and further relief as may be just and proper, together with the costs and disbursements of this action." *Id*. ¶ 220.

### III. NOTICE OF REMOVAL IS TIMELY

16. Pursuant to 28 U.S.C. § 1446(b)(2)(B), "each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons" to file its notice of removal.

17. Philips North America LLC was served on August 17, 2023 by personal service. **Exhibit B, Service of Philips North America LLC 1; Exhibit C, Service of Philips North America LLC 2**.

18. Philips Holding USA, Inc. was served on August 17, 2023 by personal service. **Exhibit D, Service of Philips Holding USA, Inc. LLC**.

19. Upon information and belief, Koninklijke Philips N.V., Philips RS North America LLC, Philips Healthcare, and Health System Services, Ltd., have not properly been served as of the date of this Notice of Removal.[2]

20. Thus, this notice is timely because it has been filed within thirty days of service on properly joined parties.

---

[2] As discussed below, service on Health System Services, Ltd., is irrelevant for the purposes of this removal as it is fraudulently joined, and all Philips Defendants consent to the removal.

21.     Additionally, this notice is timely because it is filed within one year after commencement of the action pursuant to 28 U.S.C. § 1446(c)(1).

## IV. GROUNDS FOR REMOVAL

22.     Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

23.     This court has original subject-matter jurisdiction under 28 U.S.C. § 1332, diversity jurisdiction, because, excluding the fraudulently joined HSS, this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

24.     While removal is not permitted based only on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2), "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right to removal by merely joining as [a] defendant[] [a] part[y] with no real connection with the controversy." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co. L.P.*, 712 Fed. App'x 85, 86 (2d Cir. 2018) (alterations in original) (citation omitted).

25.     "Under the doctrine of fraudulent joinder, courts overlook the presence of a non-diverse defendant if there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse action in state court." *Id*. (alterations in original) (citations omitted); *see Naber v. First Am. Title Ins. Agency, Inc.*, 2022 WL 16832644, at *4 (W.D.N.Y. Nov. 9, 2022).

26. As discussed below, HSS has been fraudulently joined because Plaintiffs cannot maintain a valid cause of action against it.

27. Therefore, Philips RS may remove the action to federal court pursuant to 28 U.S.C. § 1441(b).

    a. <u>There is complete diversity among the properly named parties.</u>

28. Diversity jurisdiction "require[s] complete diversity of citizenship," *i.e.*, "the citizenship of each plaintiff" must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Accordingly, no plaintiff can be a citizen of the same state as any of the defendants. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998); *Boergers v. Miami Dolphins, Ltd.*, 2019 WL 6297203, at *1 (W.D.N.Y. Nov. 25, 2019).

29. The general rule is that diversity is determined at the time the complaint is filed. *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999); *Naber*, 2022 WL 16832644, at *4.

    i. <u>Plaintiffs are citizens of New York.</u>

30. Plaintiffs allege they are "citizens of the State of New York, residing in Ontario County." Ex. A ¶ 11.

31. Thus, Plaintiffs are citizens of New York.

    ii. <u>Defendant Philips RS is a citizen of Massachusetts and Delaware.</u>

32. Philips RS is a Delaware limited liability company with its principal place of business located in Pennsylvania. **Exhibit F, Philips RS North America LLC Corporate Records & Business Registrations**.

33.     As a limited liability company, however, Philips RS is a citizen of the states where its members are citizens for purposes of diversity jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016); *Boergers*, 2019 WL 6298203, at *1.

34.     Philips RS is wholly owned by a single member, Philips RS North America Holding Corporation, a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, Massachusetts 02141. **Exhibit G, Philips RS North America Holding Corporation Corporate Records & Business Registrations**.

35.     For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

36.     Accordingly, because Philips RS North America Holding Corporation is a citizen of both Delaware and Massachusetts, Philips RS also is a citizen of both Delaware and Massachusetts. Therefore, Philips RS is diverse from Plaintiff.

        iii.     <u>Defendants Philips North America LLC and Philips Holding USA, Inc. are citizens of Delaware and Massachusetts.</u>

37.     Philips North America LLC is a Delaware limited liability company with its principal place of business in Massachusetts. **Exhibit H, Philips North America LLC Corporate Records & Business Registrations**.

38.     Philips North America LLC is wholly owned by a single member, Philips Holding USA, Inc., a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, Massachusetts 02141. **Exhibit I, Philips Holding USA, Inc., Corporate Records & Business Registrations**.

39.     Accordingly, because Philips Holding is a citizen of both Delaware and Massachusetts, Philips NA also is a citizen of both Delaware and Massachusetts. Therefore,

Philips NA and Philips Holding are diverse from Plaintiffs. *See Carter*, 822 F.3d at 60 (explaining that an LLC has citizenship of its members); *Boergers*, 2019 WL 6298203, at *1 (same); 28 U.S.C. § 1332(c)(1) (explaining that a corporation is a citizen of the state where it is incorporated and the state of its principal place of business).

      iv. <u>Defendant Philips Healthcare is diverse.</u>

40. Plaintiffs name "Philips Healthcare" as a defendant in the Underlying Action. However, without additional information, it is not clear which actual entity Plaintiffs are attempting to join to the Underlying Action by naming "Philips Healthcare" in the Complaint.

41. Nevertheless, even as alleged, the Plaintiffs aver that "Philips Healthcare" is diverse from the Plaintiffs. Ex. A ¶ 17 ("Upon information and belief, Defendant Philips Healthcare is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, Massachusetts 02141.").

42. Therefore, based on Plaintiffs' own allegations, "Philips Healthcare" is diverse from Plaintiffs.

      v. <u>Defendant HSS is fraudulently joined and thus its citizenship is irrelevant</u>.

43. HSS is fraudulently joined and the Court should ignore its citizenship.

44. To establish that a defendant has been fraudulently joined, the defendant must demonstrate that the plaintiff cannot recover against the non-diverse defendant in state court. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

45. The Device was provided pursuant to a physician's prescription. Ex. A, ¶¶ 72, 86, 133, 135, 155-56, 158-61, 164-67, 185, 189, 192, 195-96.

46. The Device can be sold only to physicians or under the prescription of a physician.

47. *First*, Plaintiffs cannot recover against HSS because "[t]he Complaint is devoid of any allegations that [HSS] did anything other than correctly fill a prescription, and dispense the product as packaged by [Philips]." *Negrin v. Alza Corp.*, 1999 WL 144507, No. 98 CIV. 4772 DAB (S.D.N.Y. Mar. 17, 1999); *see also Bichler v. Willing*, 58 A.D.2d 331, 397 N.Y.S.2d 57 (1st Dep't 1977) (dismissing claims against non-manufacturer pharmacist where pharmacist did no more than dispense the drug as designed and manufactured by the manufacturer and as prescribed by the physician).

48. In *Negrin*, the plaintiff sued the manufacturers of a nicotine patch for personal injuries, joining the pharmacy that dispensed the product under theories of negligence, breach of warranty, and strict liability. The *Negrin* complaint alleged that the nicotine patch, which required a prescription, was made by the manufacturers and that the patches and their directions were in defective condition when the pharmacy purchased them. The pharmacist merely sold the nicotine patch as packaged by the manufacturer. 1999 WL 144507, at *5.

49. Likewise, in *Winters v. Alza Corp.*, the plaintiff sued the manufacturers of a nicotine patch for wrongful death and asserted tort claims against the pharmacy that dispensed the product. The plaintiff claimed "that his wife's death was the result of a design defect in a pain medication patch manufactured and marketed by two of the defendants" which was "dispensed to [the deceased] in accordance with her doctor's prescription." 690 F. Supp. 2d 350, 351 (S.D.N.Y. 2010).

50. In both *Negrin* and *Winters*, the court held the non-manufacturer party was fraudulently joined, as there was "no possibility" of recovery based on the respective pleadings. *Negrin*, 1999 WL 144507, at *5 ("The Complaint is devoid of any allegations that Duane Reade did anything other than correctly fill a prescription, and dispense that product as packaged by

Defendant Manufacturers. Absent some further allegations, the Court agrees with Defendants that there is no basis under New York law to hold Duane Reade liable on theories of negligence, breach of warranty, or strict liability."); *Winters*, 690 F. Supp. 2d at 353 ("A pharmacist generally cannot be held liable for negligence under New York law in the absence of an allegation that he either (a) failed to fill a prescription precisely as directed or (b) was aware that the customer had a condition rendering prescription of the drug at issue contraindicated.").

51. Similarly, here, there is no possibility of recovery against HSS, the non-manufacturer party. Like the plaintiffs in *Negrin* and *Winters*, Plaintiffs allege that the Philips prescription device at issue was defectively designed and was simply passed through by HSS in filling the prescription in the original packaging without alteration. Ex. A, ¶¶ 2, 3, 21, 54, 85 (alleging **Philips** manufactured and designed the Device); *id*. ¶¶ 46 (alleging that **Philips** used PE-PUR foam in the Device, **Philips** brought the Device to market, **Philips** engaged in the FDA's clearance process, and **Philips** received complaints about the Recalled Devices); *id*. ¶¶ 48-70 (alleging information regarding the FDA's investigation about ***Philips'*** relationship to the Recalled Devices and the PE-PUR foam); *id*. ¶¶ 115-39 (alleging design defect); *id*. ¶¶ 172-82 (alleging manufacturing defect) *id*. ¶¶ 143, 174 ("The subject device manufactured by Defendants reached Plaintiff Sharon Lis without substantial change."); *id*. ¶¶ 86, 133, 155-56, 158-61, 164-67, 185, 189, 192, 195-96 (alleging Plaintiff Sharon Lis was prescribed the Device).

52. *Second*, HSS is fraudulently joined for the independent reason that Plaintiffs engage in impermissible "group pleading." *See* N.Y. C.P.L.R. § 3013 ("Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of

10

action or defense."); *Aetna Cas. & Sur. Co. v. Merchs. Mut. Ins. Co.*, 84 A.D.2d 736, 736 (1st Dep't 1981); *Barlow v. Skroupa*, 173 N.Y.S.3d 98 (N.Y. Cty. Mar. 23, 2022) (dismissing unjust enrichment claims where "plaintiffs . . . rest on their impermissible group pleading") (citation omitted); *see also Negrin*, 1999 WL 144507, at *5 (finding fraudulent joinder where, aside from an allegation that the nicotine patches and directions "were purchased new from the defendant [pharmacy] and were in defective condition at that time," there were "no further factual allegations regarding specific actions taken by [the pharmacy]" and "the remainder of the [c]omplaint alleges that 'defendants' engaged in the same conduct").

53. In *Aetna Casualty & Surety Co.*, the court held that because "the first four causes of action are pleaded against all defendants collectively without any specification as to the precise tortious conduct charged to a particular defendant . . . Defendants cannot reasonably be required to frame a response to the complaint in its present state."  84 A.D.2d at 736.

54. Here, as in *Aetna*, *Barlow*, and *Negrin*, Plaintiffs engage in impermissible group pleading.  Plaintiffs make only a handful of allegations against HSS individually, which primarily relate to HSS's citizenship and the appropriateness of the Court's jurisdiction.  *See* Ex. A, ¶¶ 18, 33, 39, 40.  Plaintiffs purport to make substantive allegations against HSS only in two paragraphs: first, Plaintiffs allege, in a conclusory manner, that "the subject device used by Plaintiff Sharon Lis was distributed by HSS" on or about April 11, 2018, Ex. A ¶ 6; second, Plaintiffs allege, again in a conclusory manner, that HSS "was engaged in the business of distributing, selling, promoting, advertising and marketing the subject device," Ex. A ¶ 33.

55. Throughout the remainder of the Complaint, Plaintiffs attempt to evade scrutiny by directing nearly all of their allegations either to the Philips Defendants or at "Defendants" generally.

11

56. Moreover, Plaintiffs do not, at any point, attempt to allege that "HSS" is involved in the development, design, or manufacture of the subject devices—nor could they in good faith. Yet, throughout their recitation of their causes of action, Plaintiffs lump all "Defendants" together when alleging they "designed and developed" and "manufactured" the recalled devices and the subject device. *See, e.g., id.* ¶¶ 95, 96, 143-45, 176. Any attempt to attribute these functions to HSS is misleading and false, as demonstrated by Plaintiffs' express allegations that the Device at issue is a "**Philips** DreamStation Auto Continuous Positive Airway Pressure mechanical ventilator device." *Id.* ¶ 1 (emphasis added). Plaintiffs' allegations against "Defendants" as a group apply only to the Philips Defendants, and any attempted application to HSS should be disregarded.

57. Moreover, throughout the Complaint, Plaintiffs make allegations against "Defendants" as a group without thought or consideration as to which acts relate to which Defendants. For example, Plaintiffs allege that "Defendants acted in all respects as agents or apparent agents of one another" and "Defendants combined their property and labor in a joint undertaking for profit, with rights of mutual control over each other." *Id.* ¶ 35. These allegations plainly concern the Philips Defendants, not an ultimate, third-party retailer like HSS.

58. It is clear that when Plaintiffs refer to "Defendants" collectively, they intend to, and plausibly only, address the Philips Defendants.

59. Because Plaintiffs' allegations are directed broadly to "Defendants" even though they plainly and plausibly relate only to the Philips Defendants, they should be disregarded as "group pleadings" that are too general to survive New York's pleading standard. *See* N.Y. C.P.L.R. § 3013; *Aetna*, 84 A.D.2d at 736; *Barlow*, 173 N.Y.S.3d at 108; *Negrin*, 1999 WL 144507, at *5.

60. Accordingly, HSS's citizenship is of no consequence as it is fraudulently joined

because Plaintiffs cannot state a basis for recovery under state law. *See Pampillonia*, 138 F.3d at 462; *Naber*, 2022 WL 16832644, at *4; *Negrin*, 1999 WL 144507; *Winters*, 690 F. Supp. 2d at 350.

      vi.   There is complete diversity between the properly joined parties.

61.    Thus, based on the foregoing, there is complete diversity between the properly joined parties:

| Plaintiff | Defendants |
| --- | --- |
| Sharon Lis (NY)<br>Allen Lis (NY) | Philips RS (DE/MA)<br>Philips North America (DE/MA)<br>Philips Holding USA, Inc. (DE/MA)<br>Philips Healthcare (DE/MA) |

    b.   The amount in controversy requirement is satisfied.

62.    There plainly is more than $75,000 in controversy. *See* 28 U.S.C. § 1332(a).

63.    Plaintiffs do not explicitly plead in the Complaint that the amount in controversy exceeds $75,000.[3] Given the nature and extent of Plaintiffs' alleged injuries and harm, however, the amount in controversy plainly exceeds the jurisdictional threshold.

64.    Although Philips RS denies any liability to Plaintiffs, the nature of the case (a medical device products liability action), the harms alleged (bronchogenic carcinoma, surgery, "severe symptoms of lung cancer," continuous/lifelong medical treatments, "severe associated pain, suffering, and emotional distress," "diminished enjoyment of life," and loss of consortium), and the nature of the damages requested (including not only what appear to

---

[3] Plaintiffs demand damages against Defendants "in an amount exceeding the jurisdictional limits of all other courts which would otherwise have jurisdiction over this matter." Ex. A, ¶ 113.

be compensatory damages, but also punitive damages, and "costs and disbursements") place far more than $75,000 in controversy.

65. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Jean-Louis v. Carrington Mortg. Servs., LLC*, 849 F. App'x 296, 299 n.11 (2d Cir. 2021); *Fibrix LLC v. Schlumberger Tech. Corp.*, 2022 WL 18215855, at *3 (W.D.N.Y. Nov. 2, 2022).

66. Where the complaint does not specify the amount in controversy, "courts examine the nature of the claims [and] factual allegations within the pleadings" to determine whether the jurisdictional threshold is satisfied. *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006) (citations omitted).[4]

67. In *In re Eliquis (Apixaban) Prod. Liab. Litig.*, three plaintiffs filed motions to remand and argued that the amount in controversy requirement was not satisfied. No. 17MD2754 (DLC), 2018 WL 1394179, at *1-2 (S.D.N.Y. Mar. 19, 2018). The court disagreed and held that the amount in controversy was satisfied because "on their face, the complaints establish a reasonable probability that the claims seek damages in excess of $75,000." *Id*. at *2. Plaintiffs each alleged serious injury resulting from their use of the product at issue and sought damages for their physical injuries as well as pain and suffering, loss of income, and attorneys' fees. *Id*.

---

[4] *See Short v. Conagra Foods, Inc.*, No. CIV.A. 5:08-112-JMH, 2008 WL 2559244, at *2 (E.D. Ky. June 23, 2008) ("Noting Plaintiff's allegation of permanent loss of bodily function and great pain, along with the numerous other cases in this MDL in which the damages exceed $75,000, this Court is of the opinion that Defendant has met its burden of showing that it is 'more likely than not' that the jurisdictional amount in controversy prerequisite is met in this case.")

68. In *Nickel v. Nike, Inc.*, the plaintiff brought a personal injury action alleging severe and permanent injury in addition to mental anguish, and alleged that he "has been caused to incur, and will continue to incur, expenses for medical care and attention; and as a further result, Plaintiff was, and will continue to be, rendered unable to perform Plaintiff's normal activities and duties." No. 11 CIV. 4495 PKC, 2011 WL 4343852, at *2 (S.D.N.Y. Aug. 18, 2011). The court concluded that "these allegations of serious, permanent, and debilitating physical and mental injury support the conclusion that there is a reasonable probability that the $75,000 threshold will be satisfied." *Id.*; *see also Juarbe v. Kmart Corp.*, No. 05CIV1138TPGTS, 2005 WL 1994010, at *1-2 (S.D.N.Y. Aug. 17, 2005) (finding amount in controversy satisfied in personal injury case where plaintiff alleged serious and permanent injury, pain and suffering, past and future medical expenses and diminished lifestyle); *Felipe v. Target Corp.*, 572 F. Supp. 2d 455, 459 (S.D.N.Y. 2008) (same and citing *Juarbe*, 2005 WL 1994010, at *1-2); *Burr ex rel. Burr*, 478 F. Supp. 2d at 439 (finding amount in controversy satisfied in personal injury case where plaintiff alleged "serious and severe permanent personal injuries").

69. In *Taylor v. Medtronic, Inc.*, the plaintiff alleged "constant pains, lump in lower right abdomen, significant weight loss, worsening lower back pain, trauma to [his] abdomen and thereafter severe emotional distress, extreme pain and discomfort, and superior mesenteric artery syndrome, and that he will likely undergo further medical treatment and procedures as a result of his hernia repair surgery and implanted mesh." No. 318CV1201FJSML, 2020 WL 886118, at *4 (N.D.N.Y. Feb. 24, 2020), remanded on other grounds, 15 F.4th 148 (2d Cir. 2021) (citations omitted). In *Taylor*, the plaintiff sought "damages including medical expenses, hospitalization expenses, lost income, physical and

15

mental pain, and other economic and non-economic damages, including punitive damages." *Id*. The Court found that, based on these injuries, the amount in controversy was satisfied.

70. In the Underlying Action, Plaintiffs also bring a products liability action, also allege serious injuries (including cancer), severe and permanent injury, mental pain and suffering, damages for past and future medical expenses and diminished lifestyle, among other alleged injuries and damages, under similar causes of action. Therefore, the Court should find the amount in controversy is satisfied.

71. Additionally, punitive damages, which Plaintiffs request, may be considered when calculating the amount in controversy. *Freeman v. Jacobson*, No. 20-CV-10040 (SN), 2021 WL 3604754, at *4 (S.D.N.Y. Aug. 13, 2021) ("The Court may consider punitive damages in addition to compensatory damages to calculate the amount in controversy.") (citing *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991)).

72. For these reasons, the amount in controversy requirement clearly is satisfied.[5]

---

[5] Other courts are in agreement that allegations such as those advanced by Plaintiffs here satisfy the amount in controversy requirement. *See Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630 (W.D. Ky. May 11, 2007) (denying remand and finding allegations "likely amount to claims in excess of $75,000" where plaintiff sought to recover for a permanent injury, as well as pain and suffering, punitive damages, and past and future medical expenses); *Milter v. Wright Medical Group, Inc.*, 11-CV-11353, 2011 WL 4360024, at *3 (E.D. Mich. Sept. 19, 2011) (denying remand and finding "no doubt" that plaintiff's alleged injuries "more likely than not" exceeded $75,000 where plaintiff alleged that a medical device manufactured by defendants was defective, requiring plaintiff to incur revision surgery, hospitalization, elevated levels of toxic metals in plaintiff's blood, disability, medical expenses, lost wages, and physical and mental pain and suffering); *Culpepper v. Stryker Corp.*, 968 F. Supp. 2d 1144, 1158 (M.D. Ala. 2013) (noting generally that product liability actions routinely result in verdicts in excess of $75,000); *Evans v. CDX Services, LLC*, 528 F. Supp. 2d 599, 606 (S.D.W. Va. Jan. 4, 2007) (concluding that "one can easily conclude the amount in controversy is satisfied" in the context of a tort where plaintiff alleges "serious bodily injury, tremendous pain and suffering, loss of earning capacity," and "loss of ability to enjoy life"); *Fuller v. Pistorius Mach. Co.*, No. 05-6099-CV-W-FJG, 2006 WL 8438334, at *1-2 (W.D. Mo. July 21, 2006) (denying remand and finding amount in controversy satisfied in a products liability action alleging permanent injuries and damages for "for medical care and treatment, surgery and therapy, and . . . lost wages and . . . earnings capacity" because plaintiff "alleged in his petition a serious and disabling injury").

V. VENUE

73. This lawsuit may be removed to the United States District Court for the Western District of New York, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).

74. The United States District Court for the Western District of the New York is the federal judicial district encompassing the Supreme Court of the State of New York, County of Niagara. 28 U.S.C. § 112(d).

75. On October 8, 2021, the United States Judicial Panel on Multidistrict Litigation issued a Transfer Order, consolidating related class action cases and individual personal injury cases like this matter into a multidistrict litigation (MDL 3014) and ordering their transfer to the Western District of Pennsylvania, before the Honorable Joy Flowers Conti (the "MDL") for coordinated or consolidated pretrial proceedings. **Exhibit J, Transfer Order**.

76. It is anticipated that this case will be transferred to the MDL following removal.

VI. CONSENT

77. Each defendant that has been properly joined and served consents to removal as required by 28 U.S.C. § 1446(b)(2). **Exhibit K, Declaration of W. Monahan**.

VII. PROCEDURE

78. Written notice of the filing of the Notice of Removal will be promptly served on all other parties to this action and a copy will promptly be filed with the Supreme Court of the State of New York, Country of Niagara, as required by 28 U.S.C. § 1446(d).

79. Included with this Notice of Removal is the filing fee required by 28 U.S.C. § 1914.

VIII. CONCLUSION

Philips RS respectfully removes this action from the Supreme Court of the State of New York, Country of Niagara to the United States District Court for the Western District of New York.

17

Respectfully submitted,

| | |
|---|---|
| John P. Lavelle, Jr.<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1701 Market Street<br>Philadelphia, PA  19103-2921<br>Telephone:     +1.215.963.5000<br>Facsimile:      +1.215.963.5001<br>*john.lavelle@morganlewis.com*<br><br>*Of Counsel for Defendant Philips RS North America LLC* | */s/ Gary A. Adler*<br>Gary A. Adler<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Ave.<br>New York, NY 10178-0060<br>Telephone:     +1.212.309.6140<br>Facsimile:      +1.212.309.6001<br>*gary.adler@morganlewis.com*<br><br>*Attorneys for Defendant Philips RS North America LLC* |

Dated:  August 31, 2023

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 31, 2023, I caused a true and exact copy of the foregoing document to be served via email and first-class mail to counsel of record as follows:

Michael A. Ponterio, Esq.
**Lipsitz, Ponterio & Comerford LLC**
424 Main Street, Suite 1500
Buffalo, NY 14202
Telephone:    +1.716.849.0701
Fax:          +1.716.849.0708

Connor G. Sheehan, Esq.
Texas Bar No. 24046827
**Dunn Sheehan LLP**
5910 N. Central Expressway, Suite 1310
Dallas, Texas 75206
Telephone:    +1.214.866.0077
Fax:          +1.214.866.0070
csheehan@dunnsheehan.com

*Counsel for Plaintiffs*

                                        */s/ Gary A. Adler*